PEOPLE *v*. JONES.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CONSTITUTIONAL LAW.

Supreme Court does not pass upon question as to constitutionality of act denying trial judge in a municipal court of record who conducts a trial the right to set aside a verdict of conviction when satisfied jury's conclusion is palpably unjust where defendants have not raised constitutional objection (3 Comp. Laws 1929, § 16529).

2. CRIMINAL LAW—INCOMPETENT QUESTIONS—INNUENDO—WITHDRAWAL OF QUESTION BEFORE ANSWER.

In prosecution of police officers for assault and battery upon an individual whom they had arrested for fraud by trick, question put to one defendant, then on the witness stand, by assistant prosecuting attorney, which carried intimation that defendants had committed acts of extortion, *held*, reversible error notwithstanding withdrawal after objection of defendants' attorney before answer was made as the innuendo could not be withdrawn from the minds of the jurors.

3. SAME—ASSAULT AND BATTERY—EVIDENCE OF MOTIVE.

In prosecution of police officers for assault and battery, letter written to judge of a municipal court of record in which complaining witness charged that defendants had attempted to extort money from him *held*, admissible as tending to show a purpose or motive to commit the assault alleged to have taken place a few hours after the offensive letter had been shown to defendants since defendants' knowledge that such letter had been written was a part of the whole transaction that was the subject of the charge.

4. SAME—ASSAULT AND BATTERY—RES GESTAE.

The circumstances which, in fact, led to the alleged assault were a part of the *res gestae*, which the jury were entitled to have before them, to show what was the real nature of the act, the *quo animo*, state of mind and intention, with which it was done, as the object of the trial should be to show the real nature of the transaction, whether its tendency may be to establish guilt or innocence.

5. ASSAULT AND BATTERY—INTENT—CIRCUMSTANTIAL EVIDENCE.
  Intent is an element of the crime of assault and battery and may be established by circumstantial evidence.

6. CRIMINAL LAW—INTENT—EVIDENCE.
  Evidence which has any bearing on intent or motive is admissible so long as it is within safe bounds of relevance.

7. SAME—ASSAULT AND BATTERY—INTENT—EVIDENCE—HEARSAY—PROOF OF OTHER CRIMES.
  In prosecution of police officers for assault and battery, introduction in evidence of letter written by complaining witness to a judge of a municipal court of record in which defendants were charged with having attempted extortion of money from the writer and which letter was shown to defendants a few hours prior to alleged assault was not objectionable as hearsay because not offered to establish the substantive truth of its contents nor inadmissible as incompetent because it might tend to prove conduct otherwise criminal where it was introduced to permit jury to infer a motive of retaliation.

Appeal from Recorder's Court for the City of Detroit; Gordon (Arthur E.), J. Submitted April 11, 1940. (Docket No. 120, Calendar No. 40,950.) Decided June 3, 1940.

Jack Jones and Joseph Conaster were convicted of assault and battery. Reversed and new trial ordered.

*Thomas Read,* Attorney General, *Duncan C. McCrea,* Prosecuting Attorney, and *William L. Brunner* and *John K. Graham,* Assistant Prosecuting Attorneys, for the people.

*Thomas F. Chawke,* for defendants.

BUTZEL, J. Defendants, detectives in the metropolitan police department of the city of Detroit, were convicted of assault and battery. Defendant Jones has held the rank of detective for over 14 years, and

defendant Conaster has held a similar position for over 9 years. They arrested the prosecuting witness, Frank Roberson, on the complaint of a woman who claimed that she had been defrauded of about $100 by a "pocketbook trick." Defendants were assigned the investigation of her case. She identified the prosecuting witness as one of the men who had defrauded her from pictures of confidence men shown her at-police headquarters. Defendants learned that Roberson recently had tried to get Judge Skillman to perform a marriage ceremony, and they asked Judge Skillman's clerk for Roberson's address. The clerk showed them a letter Roberson had written to Judge Skillman in which it was charged that the two detectives had attempted to extort $25 from him. Shortly thereafter Roberson came into the courtroom and was arrested as he stepped into the hall. He claims that he was taken to an upstairs room at the Canfield avenue station, and that after he was charged with having made the accusation against the detectives, one of them struck him and knocked him down, and the other kicked him while he was on the floor. The proofs showed that he was taken to the Receiving Hospital in Detroit where some sutures were used to repair the broken skin below an eye. One leg was slightly bruised below the knee. He was promptly released to the police and returned to the precinct station. The woman who claimed to have been defrauded was given an opportunity to see Roberson in person, and she concluded that he was not one of the men who had defrauded her.

Defendants denied the assault. They and another officer who was present claimed that Roberson, gesticulating excitedly, leaned back in his chair and fell over, and that he was injured when he struck his head against a sharp corner of the baseboard in the room. Defendants claimed that the floor in the room was

highly polished and slippery, although Roberson insisted that it was not. Except as to the injury, the testimony was highly conflicting. When the jury returned the verdict of guilty, the trial judge stated:

"I am inclined to the belief that there was a serious miscarriage of justice in this case. I know of no similar case in which any person was convicted upon the uncorroborated testimony of a paranoiac who has been a borderline insane person for a number of years, in addition to which he has been an habitual criminal ever since his childhood, so much so that when they sought to release him from the asylum in Ionia, where he had been sent for observation after many conflicts with the officers in Jackson and in Marquette, that his own sister would not consent to receiving him at Atlanta, showing little faith in his claims of reformation.

"But a jury of this court has said these officers are guilty, and since it is a misdemeanor case, I can do nothing but accept the verdict, but in any event, the officers have been punished enough already, even if they were guilty,—which I don't believe—and sentence is suspended."

Although he concluded that the verdict was a miscarriage of justice, he felt that he was unable to order a new trial because 3 Comp. Laws 1929, § 16529 (Stat. Ann. § 27.3952), limited the consideration of motions for new trial in municipal courts of record to the presiding judge or some judge designated by him other than the judge who sat in the trial of the cause. The presiding judge heard the motion for a new trial and, after an examination of the record of the proceedings, ruled that there was a question for the triers of the facts and that there were no errors to warrant his intervention. Defendants have raised no constitutional objection to the statute that denies

the judge who conducts the trial the right to set aside the verdict of conviction when he is satisfied that the jury's conclusion is palpably unjust. We do not pass upon this question.

For several reasons it is claimed that the trial was improper. In the course of the testimony of defendant Jones, the following transpired:

"*Q.* Did anyone else ever complain to the judge relative to you and your partner?

"*Mr. Chawke:* I object to that.

"*Mr. Graham:* Shaking down—

"*Mr. Chawke:* I object to it as wholly immaterial.

"*Mr. Graham:* He has testified he wasn't angry.

"*The Court:* I don't follow you.

"*Mr. Graham:* I will withdraw the question."

This question carried the intimation that defendants had committed acts of extortion. It will not do to say that there could be no harm because the question was withdrawn before it was answered. The innuendo cannot be withdrawn from the minds of the jurors. The rule of evidence which bars such questioning is so elementary that it would appear that the prosecution deliberately used this scheme of getting before the triers of the facts a suggestion that could not otherwise lawfully be introduced. The object becomes clearer when we note that the prosecution completed the sentence before the trial judge could rule on the unfinished question that already bore ample tokens of its incompetence. Fairness becomes a shibboleth if we permit such illegal attacks on the credibility of one who is obliged to take the stand to defend his liberty. See *People* v. *Kolowich,* 262 Mich. 137; *People* v. *Holmes,* 292 Mich. 212, and cases cited therein.

Because the case is reversed and a new trial is

granted, it is proper to pass on the admissibility in evidence of the letter written by Roberson to Judge Skillman, in which it was charged that defendants tried to extort money from Roberson. Defendants claim that the letter is objectionable as hearsay. The trial court admitted it on the theory that it tended to show a purpose or motive to commit an assault and battery, and that it was connected directly with the alleged wrongful acts. The trial court was right. On the morning the complaining witness was arrested, Judge Skillman's clerk showed the offensive letter to defendants; a few hours later the complaining witness was taken into custody, and it is claimed that the assault and battery occurred soon thereafter. Defendants' knowledge that such a letter had been written was a part of the whole transaction that is the subject of the charge, and this bit of evidence adds color to the other facts and circumstances. In *People v. Potter*, 5 Mich. 1, 5 (71 Am. Dec. 763), the rule was stated:

"Upon the trial of an indictment, the whole occurrence immediately preceding the commission of the act charged as criminal can be given in evidence, for the purpose of illustrating the act itself, by showing the influences which operated to produce the catastrophe, to establish malice, and to justify the act or mitigate the crime."

And in *Maher v. People*, 10 Mich. 212, 225 (81 Am. Dec. 781), it was said:

"The circumstances which, in fact, led to the assault were a part of the *res gestae*, which the jury were entitled to have before them, to show what was the *real nature of the act*, the *quo animo*, state of mind and intention, with which it was done. The object of the trial should be to show the real nature of the

transaction, *whether its tendency may be to establish guilt or innocence."*

The principle thus enunciated is with us in its full vigor. See *People* v. *Palmer,* 105 Mich. 568; *People* v. *Kayne,* 268 Mich. 186. Furthermore, intent is an element of the crime to be proved. State of mind may be established by circumstantial evidence. The theory here is that the circumstances may show a probable desire to injure, and thus the probability of intentionally causing the injury. Evidence which has any bearing on intent or motive is admissible so long as it is within safe bounds of relevance. *Druse* v. *Wheeler,* 22 Mich. 438; *Templeton* v. *People,* 27 Mich. 501; *Hamilton* v. *People,* 29 Mich. 173; *Tyler* v. *Nelson,* 109 Mich. 37 (12 Am. Neg. Cas. 121); *People* v. *Morgan,* 124 Mich. 527; *People* v. *Owen,* 154 Mich. 571 (21 L. R. A. [N. S.] 520); *People* v. *MacCullough,* 281 Mich. 15. The letter in the instant case is not objectionable as hearsay because it was not offered to establish the substantive truth of its contents, but to show that defendants knew that Roberson made the accusations. From this the jury were asked to infer a motive of retaliation. The letter thus admissible is not rendered incompetent because it might tend to prove conduct otherwise criminal. See *People* v. *McHugh,* 286 Mich. 336, and cases cited therein.

The conviction is set aside and a new trial is ordered.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, and WIEST, JJ., concurred with BUTZEL, J.

McALLISTER, J. (*concurring*). The question asked defendant Jones as to whether anyone had complained to the judge relative to himself and defendant Conaster for engaging in "shake-downs"—mean-

ing extortion—was so prejudicial to defendant's right to a fair trial on the issue of whether he was guilty of assault and battery that the judgment of conviction must be reversed and a new trial ordered.

Chandler, J., concurred with McAllister, J.