354 So.2d 1282 (1977)
STATE of Louisiana
v.
Gregory R. HOLMES.
No. 60106.
Supreme Court of Louisiana.
December 19, 1977.
*1284 George S. Hesni, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant Gregory R. Holmes was charged with the armed robbery of Enos Jones on October 29, 1974. La.Rev.Stat. 14:64. A jury found him guilty as charged, and he was sentenced to imprisonment for twelve years.
Defendant entered the "Our Place" bar on Thalia Street in New Orleans on the night of October 29, 1974, bought a coke and BC powder and left. Twenty minutes later he returned with a nickel-plated pistol, pointed it at the owner-bartender and ordered her not to move. He then approached Enos Jones and demanded his money and his watch. After taking Jones' money he ordered Jones to sit down and put his head on the table. Defendant then robbed another patron in the bar in the same fashion. The resistance of a third customer and the interference of the proprietor's dog prevented defendant from completing a third robbery. As defendant left the bar, he shot at the dog and missed.
Jones rushed out after defendant and was in time to see him enter the passenger side of a Mustang as it drove off.

Assignment 1
It is asserted that the trial judge erred in denying defendant's motion to suppress the identification of defendant and in denying defendant's motion for discovery. Three issues are raised in this connection.
First, the defense contends that his arrest was unlawful and the taint of that illegality rendered his line-up identification inadmissible; second, he was improperly denied the right to be represented by his retained counsel at his line-up; and, third, he was improperly denied pretrial discovery.
Another robbery by a Negro male in October 1974 occurred at "Koocheey's Bar" on Allen Street. A confidential informer contacted Officer Walker on November 10, 1974 and told him that a Negro male residing at 359 Magnum Street committed that robbery. He described the perpetrator as standing 5' 11 in height with a slim build, bush hair and being approximately twenty years old. The informer said he drove a dark green Mustang, 1965 or 67, with license number 212B742. The informer led the officer to the Magnum Street address and pointed out the dark green Mustang parked nearby.
A surveillance of that address was established by the police and that afternoon they observed a man fitting the description furnished by the informer and a witness enter the car and drive off. He was followed by the police who shortly thereafter pulled him over and arrested him for the Koocheey Bar robbery. In a search of the suspect's persons the police seized a matchbox of heroin from his pocket.
In a separate bill of information defendant was charged with possession of heroin. A motion to suppress the heroin as evidence was filed in that proceeding and the motion was granted.
In the meantime, defendant appeared in a line-up in connection with the Koocheey Bar robbery. Witnesses gave such an unsatisfactory identification that the District Attorney's Office refused the charge involving *1285 that robbery. However, the police brought the witnesses and victims of the October 29 robbery in "Our Place" to view the defendant in the same line-up. These witnesses identified defendant as the robber and he was charged with the robbery of Jones in the proceedings which are the subject of this appeal.

The arrest
The defense contention that there was no probable cause to arrest defendant is apparently based upon the fact that the trial judge sustained the motion to suppress in connection with the charge of possession of narcotics.
Sustaining the motion to suppress in the possession of the narcotics case is not determinative of the validity of the arrest in the case at bar. Especially is this so when the trial judge assigned no reasons for his ruling on that motion. Reference to the transcript of that hearing would indicate that the motion could probably have been granted because of an illegal search and seizure, not because of an illegal arrest.
In any event the motion to suppress in this case must stand upon the record and issues presented here. The validity of an arrest must be determined by the provisions of Article 213(3) of the Code of Criminal Procedure. Under that authority an officer may make a warrantless arrest for a felony committed out of his presence if he has "reasonable cause to believe that the person to be arrested has committed an offense." Reasonable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in the belief that a felony has been committed. State v. Phillips, 347 So.2d 206 (La.1977); State v. Linkletter, 345 So.2d 452 (La.1977) and State v. Johnson, 249 La. 950, 192 So.2d 135 (1966).
On the facts recited it is submitted that the information furnished by the confidential informer which was independently verified by the police against the information contained in the police report of the robbery provided reasonable cause to arrest without a warrant. The line-up was therefore not tainted by an illegal arrest.

Counsel at the line-up
The officers conducting the lineup were aware of the fact that defendant had retained counsel and they made reasonable efforts to contact him so that he could attend the line-up; however, defense counsel asserts he did not receive the message because he was elsewhere at the time. In view of retained counsel's absence an attorney was appointed to assist and advise defendant at the line-up. Appointed counsel did therefore attend the line-up.
Absence of retained counsel at a pre-indictment line-up does not deprive the defendant of rights which would warrant reversal of his conviction. Neither the federal nor state constitution guarantees the accused the right to counsel at a pre-indictment line-up. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Taylor, 347 So.2d 172 (La.1977). While recognizing the doctrine of these cases, counsel seeks to invoke the rule of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) holding that when the process shifts from investigatory to accusatory our adversary system begins to operate and at that time the accused is entitled to a lawyer.
The rule of Escobedo is not pertinent to the facts in this case. The line-up being conducted was investigatory in character, prior to indictment. Furthermore, the Escobedo rule is intended to apply to confessions and inculpatory statements, not to line-up identifications. The decisions in Kirby v. Illinois, supra, and State v. Taylor, supra, fix the rule to be applied to line-ups.

Discovery
Pretrial discovery of statements taken from potential witness was not permitted at the time defendant's motion for discovery was filed. State v. Gray, 286 So.2d 644 (La.1973).
This assignment of error is without merit.
*1286 Assignments 2 and 3 are not briefed or argued and are considered abandoned.

Assignment 4
When the defendant was arrested he had $128 in his pocket. Testimony had also established that he was unemployed. A defense objection was made at the trial when the prosecutor sought to question the arresting officers about this money, arguing that the State failed to lay a proper foundation for its introduction. The jury was retired and defense counsel restated his objection asserting that the money was seized fifteen days after the crime, there was no evidence connecting the money with the robbery, and the money stolen in the robbery was in twenty dollar denominations, whereas the money the State sought to introduce was in ones, fives and tens.
The arresting officers did identify the money as that recovered from defendant at the time of his arrest. This identification did support a claim that the money was relevant to the proof that defendant was in possession of money when he was arrested, although he did not work, leaving the inference that the money was obtained from the robbery. It is of course arguable that the time lapse since the robbery and the dissimilarity in the denominations of the bills make it highly unlikely that the money found on defendant was obtained as a result of the robbery. As tenuous as the relevancy may be it is not illogical. The weight to be given to the evidence is a matter for the jury to decide. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
In defendant's brief it is contended that the money was improperly introduced in evidence for still another reason: The money was seized incident to an unlawful arrest and as such is inadmissible. Inasmuch as this contention is made for the first time in brief, it cannot be considered. La.Code Crim.Pro. art. 841.

Assignment 5
The defense asserts that the prosecutor deliberately misled the jury when he stated in rebuttal to defense counsel's closing argument:
"It's a coincidence that Gregory Holmes was driving a dark Mustang. It's a coincidence that Gregory Holmes was wearing plaited hair. It's a coincidence that Gregory Holmes, who doesn't work, was in possession of a hundred and twenty-eight dollars. It's a coincidence that where Gregory Holmes lives there's a gun that matches the description of the perpetrator's gun. It's a coincidence that one shot was fired; and it's a coincidence that the gun was missing one bullet."
The basis of defendant's contention is that there was no evidence that the gun had been fired. Reference is made to testimony at the hearing on a motion for a new trial to the effect that the gun was inoperable when tested by police.
Several witnesses testified that defendant fired his gun once before leaving the bar. And officers seized a gun with only one bullet missing from the six bullet chamber during a search of defendant's home. The prosecutor's argument was therefore a permissible comment upon the evidence. La.Code Crim.Proc. art. 774.

Assignment 6
In a motion for a new trial defendant alleges that the verdict is contrary to the law and the evidence; that newly discovered evidence mandates a new trial; that the trial court erred in denying his motion to suppress; and that the prosecutor improperly commented in rebuttal argument that the gun had been fired.
An allegation that the verdict is contrary to the law and the evidence presents nothing for review in this Court. We have reviewed the trial judge's ruling denying defendant's motion to suppress and found it free of error. A review of the prosecutor's rebuttal argument and the trial judge's ruling on the defense objection that there was no evidence to support the statement that the gun had been fired has resulted in sustaining the ruling of the trial judge. We find that there was evidence to support the claim that the gun had been fired.
*1287 Only defendant's allegation that the gun was inoperable, a fact discovered after trial, which is said to be newly discovered evidence, has not been reviewed on this appeal.
A firearms expert did testify that the gun introduced as evidence at the trial was inoperable due to a defective trigger return spring and a bent ejector. He also testified that the gun could have become inoperable by being dropped.
The gun was seized almost two weeks after the offense. It may have become inoperable during that time. The trial judge could reasonably conclude that this evidence would not have changed the verdict. La.Code Crim.Pro. art. 851; State v. Credeur, 328 So.2d 59 (La.1976).
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs and assigns written reasons.
DIXON, J., dissents.
CALOGERO, J., dissents, finding merit in assignment of error # 1 (defendant was improperly denied representation by his retained counsel at his line-up.)
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
I disagree with the majority's treatment of the validity of the defendant's arrest. The arrest was apparently found to be unlawful by the district court in a previous motion to suppress hearing in another prosecution against the defendant for possession of narcotics. The State is therefore precluded from re-litigating this issue in this proceeding involving the armed robbery. State v. Doucet (La.1977) (Docket No. 59,784 rendered this date).
However, due to the events which intervened between the arrest and the line-up identification, the lack of flagrant official misconduct, and other factors, see, Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the causal connection between the two became so attenuated that the identification evidence cannot reasonably be considered a fruit of the unlawful arrest. See, State v. Jenkins, 340 So.2d 157 (La.1976).
I further concur in the reasons assigned by TATE, J., in his concurring opinion.
TATE, Justice, concurring.
While I concur in the conviction, I do not agree with the majority's implication that, prior to indictment, the state has no obligation to respect the accused's right to the presence of his retained counsel at a line-up.
After the accused's arrest for the offense, the investigatory stage has passed. Once counsel had been retained or appointed, the accused has a right to his counsel's presence when he is interrogated or when his person is exhibited, as an accusatory step in the proceedings, at a line-upif only to assure that the procedures are validly and fairly conducted. The constitutional right to the effective assistance of counsel does not commence with the indictment, as Escobedo and many other decisions hold.
Moreover, aside from constitutional requirements, the Louisiana Code of Criminal Procedure, Article 230, specifically provides: "The person arrested has, from the moment of his arrest, a right to procure and confer with counsel * * *." If counsel has been retained or appointed, investigating officers have no right to hustle off a defendant for a line-up or medical tests to secure evidence, for instance, without affording him a right to confer with counsel as to the legality and fairness of the procedures in which his person is to be involved.
Here, however, no flagrant violation of this right occurred. In the first place, there is some question whether counsel had actually been retained for the present (armedrobbery) offense, rather than for different (drug possession and a different armed-robbery) charges. In the second place, some effort was made to assure for the accused the presence of the counsel he said he had retained. The accused was permitted to call his office and to speak with his secretary (since counsel was absent) to leave word for him, and some additional effort was made to locate counsel.
*1288 Finally, after counsel still could not be located, an attorney was secured from the legal aid office to represent the accused at the line-up. (I note that no formal appointment by a judge was made. The representation was secured from legal aid at the request of the prosecutor.)
So far as the record shows, this attorney attempted to assure the fairness of the proceedings and adequately represented the interests of the accused. It is therefore difficult to find that actual prejudice was sustained by the accused, although admittedly reversible error should result irrespective of (proven) prejudice if the state denies the effective assistance of counsel to the accused at any proceeding to which the accused is entitled to it. See State v. McGhee, 350 So.2d 370 (La.1977).
In view of the slight ambiguity existing as to the existence of the attorney-client relationship at the time of the line-up, I am not prepared to hold it to be reversible error that further efforts, including a reasonable delay, were not made to assure the presence of the accused's retained counsel, instead of that of an attorney selected to represent him in the (assumed) absence of counsel. Thus, in my opinion, no reversible error occurred, partly because here the state made good faith efforts to assist the accused to have present the counsel of his choice.
My chief fear in ascribing to an affirmance is that, in view of the majority's broad language, less perceptive or less well-intentioned prosecutors or police officials than those here involved may regard this decision as authorizing a denial to an accused of his right to consult with his counsel (not one selected ad hoc by the state) at any accusatory proceedings involving his person following his arrest. As noted, our statutory law requires that he have access to the assistance of his counsel "from the moment of his arrest." La.C.Cr.P. art. 230. See also La.C.Cr.P. art. 511.
More important, our state and federal constitutions guarantee an accused the right to the effective assistance of counsel. Any inconvenience to the state in affording the accused such right must be regarded as the worthwhile price we pay for the individual liberty to all guaranteed by the constitutions of our republic. If the majority's opinion could be interpreted as an erosion of this fundamental right, reversal is required, despite the particularized present circumstances which in the writer's opinion may justify an affirmance.
I should also note that the causal connection between illegality of the initial arrest on November 10 and the line-up of November 10 is too attenuated to infect, per se, the validity of the line-up: The latter is insulated by intervening circumstances (representation by counsel, etc.) and time from the initial taint of the illegal arrest. See State v. Jenkins, 340 So.2d 157 (La.1976). See also, U. S. v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).
I therefore concur for the moment, with some reservations, in the affirmance.